COMMISSIONERS OF SUB-DISTRICT No. 6, etc., Defendants
in Error, *vs.* DONALD MCNULTA, Plaintiff in Error.

*Opinion filed December 22, 1909.*

1. APPEALS AND ERRORS—*order of county court striking appeal
bond from files is not final.* An order of the county court sustain-
ing a motion by the commissioners of a special drainage district
to strike a land owner's appeal bond, and its "purported approval,"
from the files is not an adjudication of the case, and is not a final
judgment which may be reviewed on appeal or writ of error.

2. DRAINAGE—*section 61 of the Farm Drainage act construed.*
The purpose of the provision of section 61 of the Farm Drainage
act that an appeal from the classification in a special drainage dis-
trict shall be taken to the county and circuit courts of the county
in which the land is situated, "as provided in sections 24 and 25
of this act," is to make the procedure on appeal in special drainage
cases the same as in cases where the district is in one county.

3. SAME—*special districts—appeal bond should be filed in the
county where district is organized.* Where a special drainage dis-
trict embraces land in two or more counties an appeal by a land
owner from the classification must be taken to the county court of
the county where his land is situated, but the appeal bond must be
filed with the clerk of the county court where the district was or-
ganized, and the bond is required to be approved by the judge or
clerk of said court.

4. SAME—*duty of clerk to transmit record to the county court
where land lies—mandamus.* Upon the filing of a good and suf-
ficient appeal bond with the clerk of the county court where a spe-
cial drainage district was organized, it is the absolute duty of the
clerk to prepare such a transcript as is necessary and transmit it
to the county court of the county where the appellant's land is lo-
cated, and he may be compelled by *mandamus* to perform this
duty, though the county court where the bond was filed improperly
ordered it stricken from the files.

WRIT OF ERROR to the County Court of Champaign
county; the Hon. THOMAS J. ROTH, Judge, presiding.

Lotus Special Drainage District was composed of lands
lying in Champaign, Piatt and McLean counties, and was
organized under the Farm Drainage act. After its organi-
zation the commissioners filed a certificate designating a

certain portion of the lands embraced in said drainage district as sub-district No. 6 of said Lotus Special Drainage District, and filed with said certificate a map showing the plan of drainage within said sub-district. The lands of the plaintiff in error lie in said sub-district and in McLean county. Plaintiff in error filed objections to the classification of his lands made by the commissioners. Said classification was modified to some extent by the commissioners, but as confirmed by them was unsatisfactory to plaintiff in error and he endeavored to appeal from the confirmation. Within ten days after the confirmation of the classification he filed with the clerk of the county court of Champaign county, which is the county wherein the greater portion of the lands of said Lotus Special Drainage District lie and the county in which the proceedings for the organization of said district were had, an appeal bond, reciting that he had appealed from the decision of the commissioners to the county court of McLean county, Illinois. Said bond contained other provisions necessary to a valid appeal bond in such cases. Said bond was accompanied by affidavits of the solvency of the sureties and a motion and prayer for appeal to the county court of McLean county, Illinois, and for the approval of said bond. The bond was approved by the clerk of the county court and the case appears to have been placed upon the county court docket. Afterward, on the 3d of October, 1908, the commissioners filed a motion in the county court of Champaign county to dismiss the appeal. Nothing appears to have been done by the county court of Champaign county with said motion, and on the 12th day of February, 1909, the drainage commissioners filed a motion in said court to strike the appeal bond, "the purported approval of it" and the motion for its approval from the files. This motion was allowed on the 15th day of March, 1909, and this writ of error was sued out to review said order and judgment of the county court of Champaign county.

WELTY, STERLING & WHITMORE, for plaintiff in error.

RAY & DOBBINS, for defendants in error.

Mr. CHIEF JUSTICE FARMER delivered the opinion of the court: ·

A motion has been made in this court by defendants in error, and taken with the case, to dismiss the writ on the ground that the order and judgment of the county court of Champaign county was not final and is therefore not subject to review on writ of error. We are of opinion this motion is well taken. Striking the appeal bond and its "purported approval" from the files was not an adjudication of the case and was not a final judgment, subject to be reviewed on appeal or writ of error. (*Frederick* v. *Savings Bank,* 106 Ill. 147; *Lillard* v. *Noble,* 159 id. 311.) The remedy of plaintiff in error was *mandamus.*

As this case presents questions that, so far as we know or are advised by briefs of counsel, have never been passed upon by this court, and as they will necessarily arise in the future procedure in the case, we have thought it not improper for the future guidance of the parties and the clerk to express our views as to the law governing appeals in such cases.

It will be seen from the preceding statement that the district is what is known as a special drainage district. It embraced lands lying in Champaign, Piatt and McLean counties. The greater portion of the lands embraced in said district are situated in Champaign county, and the proceedings for the organization of the district were had in that county as the statute requires. Appeals from the confirmation by the commissioners of the classification of the lands in such districts are required by the act under which they are organized to be taken to the county court of the county in which the lands affected are situate. Coun-

sel for both parties agree as to what court appeals in such cases shall be taken but disagree as to where the bond shall be filed and the appeal perfected. Defendants in error contend that this must be done in the court to which the appeal is taken. A determination of this question involves the construction of certain sections of the Farm Drainage act.

Several kinds of drainage districts are provided for in the Farm Drainage act. The first are districts lying wholly within one town and therefore in one county; second, union districts, lying in two towns in the same or in different counties; third, special drainage districts, which embrace lands lying in three or more towns in the same or different counties. Section 49 of the Farm Drainage act requires the petition for the organization of a special drainage district to be presented to the county court of the county in which the greater part of the lands lie. Sections 50 and 51 relate to the proceedings in the county court and the duties of the clerk of said court preliminary to the organization of the district. Section 52 provides that if the court shall find in favor of the organization of the district it shall enter an order organizing said district. Section 53 makes the county clerk of the county in which the proceedings are instituted *ex-officio* clerk of the drainage commissioners. Sections 57 and 58 provide for procuring right of way by condemnation and that such proceedings shall be in the court in which the proceedings for organization were had. Section 60 requires the commissioners to make a classification of the lands of the district and file the same in the office of the clerk of the county court. They shall fix a time and place, of which notice is required to be given by the county clerk, when and where they will meet to hear objections thereto. This meeting, unless otherwise ordered by the commissioners, is required to be held at the court house of the county in which the district was organized. At this meeting the commissioners make and enter their order correcting or confirming the classification. Said sec-

tion then provides: "All orders made by the commissioners either of correction or confirmation shall be filed in said clerk's office within five days from the completion of the hearing, and any person appearing and urging objections who is not satisfied with the decision of the commissioners in confirming the classification of his lands may appeal therefrom, within ten (10) days after the order of the commissioners is filed in said court aforesaid by filing with the clerk of said court an appeal bond with good and sufficient security, to be approved by the clerk or judge thereof, payable to said drainage district conditioned for the payment of such tax as may be levied upon the land in question and all costs occasioned by said appeal in case said order of said commissioners shall be affirmed." Section 61 is as follows: "When an appeal is taken under the preceding section, it shall be taken to the county and circuit courts of the county in which the land is situated, as provided in sections 24 and 25 of this act, and the decision rendered by the special jury in the last court of appeal shall be conclusive. The classification shall be made in writing and be made a part of the court record, and shall also be entered on the drainage journal, and shall be the basis for the levy of assessments for the purpose of drainage in the class of districts (to which) such lands may belong."

Sections 24 and 25, referred to in section 61, are embraced in those portions of the Farm Drainage act relating to the organization of districts lying wholly in one township. The petition for the organization of such districts is filed with the town clerk, and none of the proceedings are had in any court unless an appeal is taken by a land owner. Section 24 provides that an appeal may be taken from the classification to the county court in which the lands affected are situated, within ten days after the decision of the commissioners, by filing a bond as in said section provided. In such cases there can, of course, be but one court to which the appeal could be perfected, for the entire district is with-

in one county.  Section 25 provides for the procedure in the county court in appeals taken from the classification to that court and from that court to the circuit court.

We do not think there is any conflict between sections 24, 60 and 61 when they are considered with reference to the subjects to which they apply and to what was the evident purpose and intention of the legislature in enacting them. We have seen that the statute requires the petition for the organization of special drainage districts to be presented to the county court of the county wherein the greater portion of the lands in the district lie.  The clerk of said court is *ex-officio* clerk of the commissioners and keeps the record of the proceedings.  The district is organized by virtue of an order of said court.  The classification of lands made by the commissioners, and their order of confirmation, are required by section 60 to be filed in the office of the clerk of said county court, and said classification is required by section 61 to be in writing and to be made a part of the court record.  Section 24 provides for an appeal from the classification to the county court of the county in which the lands affected are situated, by filing a bond with the county clerk.  That section, as we have stated, relates to the organization of districts wholly within one county, and requires an appeal, in such case, to be taken to the county court and the bond filed with the county clerk of the county in which the district lies.  Section 60 provides for an appeal from the order confirming the classification by filing with "the clerk of said court" a bond to be approved by the "clerk or judge thereof."  That section does not state to what court the appeal shall be taken, but this is provided for in section 61, which requires it to be taken "to the county and circuit courts of the county in which the land is situated, as provided in sections 24 and 25 of this act."  Sections 60 and 61 contain no provisions for the procedure in the county court to which the appeal is taken, and the evident purpose and intention of the reference in said section 61 to sec-

tions 24 and 25 was to make the procedure, on appeal, the same in special drainage districts as in districts lying wholly in one county. This seems clear from the fact that section 61 authorizes the appeal to be taken "to the county and circuit courts." It was never the intention of the legislature that an appeal in such cases might be prosecuted to both courts at the same time or that the party appealing might select the court to which he would take the appeal. Any uncertainty about this question is made clear by sections 24 and 25 referred to. Section 24 requires the appeal to be taken to the county court, and section 25, after providing for the procedure therein, authorizes the judge of the county court, at his discretion, to grant an appeal from that court to the circuit court. The provisions of section 60 are explicit that the appeal bond shall be filed with the clerk of the court where the proceeding is had, the classification filed and made a part of the court record, and the bond is required to be approved by the clerk or judge of said court. The bond in this case was filed by plaintiff in error in the court in which he was required by the statute to file it, and unless the statute is invalid,—and this is not claimed,—when the bond was approved he had perfected his appeal. It then became the duty of the clerk of the county court of Champaign county to make such a transcript of the proceedings as was necessary to present the questions involved by the appeal and transmit them to the county court of McLean county.

Defendants in error contend that the records and files of the drainage district are not records and files of the court, and that no appeal, therefore, could be taken by filing a bond in the county court where the proceedings are had. We have seen that at least a portion of said records are by the express provision of the statute made records of the county court, and the provisions relating to appeals appear to be based on that theory.

It was the duty of the clerk of the county court, upon the filing of a good and sufficient appeal bond, to make and transmit to the county court of McLean county such a transcript as was necessary to present the questions involved by the appeal. The law makes this his duty and he has no discretion in the matter. His failure or refusal to perform this duty was not justified or excused by the order of the court striking the appeal bond; for the court had no authority to make such order, and the clerk should have performed the duty the law enjoined upon him. His action in this regard, however, is not subject to review by writ of error. The remedy is by *mandamus* to compel the clerk to do what is required of him by law if he persists in his refusal hereafter. This remedy is, in our opinion, sufficient to afford the plaintiff in error complete relief, and the writ of error is dismissed.          *Writ dismissed.*